IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JENNIFER LYNN RUDIE,

             Plaintiff,

v.

ANDREW SAUL, Commissioner of
Social Security,

             Defendant.

OPINION AND ORDER

18-cv-562-wmc

This is an appeal from an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g) finding plaintiff Jennifer Lynn Rudie is not disabled despite mental limitations and, therefore, is ineligible for either disability insurance benefits or supplemental security income under Titles II or XVI of the Social Security Act, respectively. For the reasons set forth below, the court will affirm the Commissioner's decision.

## BACKGROUND[1]

### I. Medical Evidence

Plaintiff was born on April 4, 1992. She has post-traumatic stress disorder and major depressive disorder stemming from a traumatic childhood, including sexual abuse by her adoptive father when she was 15 years old. She also received special education services in high school due to delays in math, reading, and writing. (AR 256, 262.) After

---

[1] These facts are drawn from the Administrative Record ("AR") (dkt. #11), and, given the nature of plaintiff's principal claimed disability on appeal, the court will only address plaintiff's mental impairments.

graduation in June of 2011, she held a number of part-time jobs, including child care assistant at the YMCA, associate at Wal-Mart, cleaner for Servicemaster, and in-home caregiver for Comfort Keepers.

In early March 2015, when she was almost 23, plaintiff sought counseling from Alicia Skiles at the Family & Children's Center, reporting that her PTSD symptoms had increased since her adoptive father was released from prison. More specifically, plaintiff reported sleeping poorly, experiencing night terrors, and being anxious, depressed and angered easily. (AR 636-641.) After beginning biweekly therapy sessions with Skiles, plaintiff reported in September 2015 that her symptoms had improved and she was managing her anger better. (AR 645.) However, her symptoms worsened again by December, with plaintiff reporting more flashbacks and angry outbursts at her boyfriend, which included her throwing things. (AR 649-50.) Skiles then recommended that plaintiff see a therapist who specialized in trauma work for adults. (AR 653-54.)

Plaintiff began receiving psychotherapy and psychiatric treatment from providers in the Behavioral Health Clinic at La Crosse Clinic-Franciscan Healthcare. Specifically, from January 2016 through the date of the administrative hearing in June 2017, plaintiff met regularly with Roberta Mack, a trauma therapist, and Dr. Peter Ramirez, a psychiatrist, who diagnosed her with PTSD, major depression, and generalized anxiety disorder. Mack provided cognitive and behavioral therapy, while Dr. Ramirez periodically adjusted plaintiff's medications.

## II. Disability Application and Administrative Proceedings

On April 9, 2015, Rudie applied for disability insurance benefits and supplemental

2

security income, alleging that she was disabled since October 1, 2014, because of borderline intellectual functioning, bipolar disorder, asthma, post-traumatic stress disorder, depression, anxiety, Raynaud's disease, irritable bowel syndrome, acid reflux, and scoliosis. After her initial application was denied, she sought reconsideration, which included review of her medical records by state agency psychologist Therese Harris, Ph. D.

After reviewing those records and Rudie's application information on September 1, 2015, Harris completed a Mental Residual Functional Capacity Assessment, noting that Rudie had sustained concentration and persistence limitations. Rating these limitations, Harris found that Rudie was "moderately limited" in the following areas: (1) carrying out detailed instructions; (2) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; and (3) completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (AR 95-96.) However, Harris also found Rudie was "not significantly limited" in: (1) carrying out very short and simple instructions; (2) maintaining attention and concentration for extended periods; (3) sustaining an ordinary routine without special supervision; (4) working in coordination with or in proximity to others without being distracted by them; and (5) making simple, work-related decisions. Translating these findings into narrative form, Harris wrote that Rudie was "able to maintain focus, pace, and persistence for simple tasks for 2-hour periods over an 8-hr workday within a normal

40-hour work schedule."² As a result, Harris concluded that Rudie would be "limited to unskilled work based on the PTSD and depression with anxiety traits." (AR 106.)

After her application was denied on reconsideration, Rudie requested an administrative hearing, which was held before Administrative Law Judge Debra Meachum on June 22, 2017. Represented by counsel, Rudie testified at the hearing, as did vocational expert John Rieser. (AR 23.) At the hearing, Rudie also amended her alleged onset date to January 15, 2015. (AR 23.)

By the time of the hearing, Rudie was working part time at Comfort Keepers, providing in-home care and light housekeeping, and driving clients to errands. (AR 46.) Nevertheless, Rudie testified she was unable to work full time because her health was very unpredictable from day to day, and some days she could not get out of bed because of pain or a headache. (AR 47.) Asked to explain the effect her mental impairments had on her ability to work, she testified:

> It's more meeting new people, being put in a situation where I'm by myself and stuff, and it's just the unknown. And that's why I can't go into grocery stores or stores by myself either. That's why somebody's always got to be with me. It terrifies me to be alone.

(AR 49.)

After Rudie testified, the ALJ called Rieser to provide vocational evidence, asking him in advance whether his answers would "be consistent with the *Dictionary of Occupational Titles*[.]" (AR 52.) Rieser responded that his answers would be consistent, and if not, he

---

²Harris further found that Rudie had some social limitations, but Rudie raises no challenge to these findings or the ALJ's adoption of them. Accordingly, the court does not address them further.

4

would explain the deviation. (*Id.*) The ALJ then asked Rieser whether there were any jobs in the national economy that could be performed by a hypothetical individual of Rudie's age, education, and work history who was limited to light work with the following, additional limitations:

- unskilled work involving simple, routine, and repetitive tasks;
- no fast-paced production line or tandem tasks;
- only occasional changes in the work setting;
- the ability to work up to two hours at a time before needing a regular work break; and
- occasional interaction with supervisors, coworkers and the public.

Rieser responded that "the terminology [the ALJ] used for the mental parameters here differs from what the *Dictionary* provides, but based on my own experience with these proceedings I could do the crosswalk." (AR 53.) He then testified that a person with such limitations could perform the jobs of: housekeeper (DOT code 323.687-014), of which there were 500,000 jobs in the national economy; production worker helper (DOT code 524.687-022), of which there were 91,000 jobs nationally; and general office clerk (DOT code 239.567-010), of which there were 240,000 jobs nationally. Rieser explained that all of the jobs he had identified were "light SVP 2 or 1 jobs,"[3] and insofar as he had offered

---

[3] "Specific Vocational Preparation ["SVP"] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles, App'x C, § II, available at https://occupationalinfo.org/appendxc_1.html#II (last visited Dec. 9, 2019). SVP 1 corresponds to a job that can be learned with "short demonstration only" and SVP 2 corresponds to a job that can be learned with "anything beyond short demonstration up to and including 1 month." O'Net Online, Specific Vocational Preparation (SVP), https://www.onetonline.org/help/onlinesvp (last visited Dec. 9, 2019).

5

opinions about limitations not included in the *Dictionary of Occupational Titles*, his opinions were based on his "experience in the world of work." (AR 54.)

On cross-examination, Rudie's counsel asked Rieser whether absences of more than one day of work a month would be tolerated, to which Rieser replied they would not. Counsel did not ask any other follow-up questions. (AR 55.)

## III. ALJ's Decision

On September 26, 2017, ALJ Meachum issued a decision denying Rudie's applications. Applying the commissioner's five-step process for evaluating disability claims, the ALJ found: (1) Rudie had not engaged in substantial gainful activity after her alleged onset date; (2) she had the severe impairments of spine disorder, asthma, anxiety, affective disorder, and borderline intellectual disorder; (3) none of Rudie's impairments, whether considered singly or combined, were severe enough to meet or equal the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1; (4) Rudie had no past relevant work; and (5) considering Rudie's age at onset (22), education (high school), work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AR 34.)

At step three, ALJ Meachum also considered Rudie's mental impairments. Utilizing the procedure described in 20 C.F.R. §§ 404.1520a and 416.920a, the ALJ evaluated Rudie's abilities in four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself. Meachum ultimately found that plaintiff had "moderate" limitations in all four categories, meaning that Rudie's mental

impairments were not severe enough to meet the listings. (AR 28-29.)

As a predicate to her findings at steps four and five of the sequential evaluation process, the ALJ further assessed Rudie's residual functional capacity ("RFC") based on these mental impairments, determining that she would be limited to:

> Unskilled work involving simple, routine, and repetitive tasks; no fast-paced production line or tandem tasks; only occasional changes in the work setting; the ability to work up to two hours at a time before needing a regular work break; and occasional interaction with supervisors, coworkers and the public.

AR 33. The ALJ explained that in arriving at this assessment, she had considered "the varying mental limitations assessed by various medical sources and the moderate mental limitations assessed in the record and at step three in this decision." AR 33.

Specifically, the ALJ gave great weight to the opinion of Dr. Harris, the state agency psychological consultant, finding that it "provides a thorough assessment of the claimant's functional limitations stemming from her psychiatric impairments." (AR 32.) The ALJ also observed that the "evidence submitted at the hearing level does not document any worsening of her psychiatric impairments and indicates the claimant responds well to medication and therapy." (AR 32-33.) Finally, the ALJ noted that: "moderate mental limitations are not, for purposes of assessing disability within the meaning of the Social Security Act, specifically defined in medical and vocational terms"; "the interpretation of varying facts in evidence is not a precise science"; and it was her job as the adjudicator to assess Rudie's RFC based on the entire record, including the hearing testimony. (AR 33.)

In support of her step five conclusion that there were jobs in the national economy that Rudie could perform in spite of her limitations, the ALJ relied on the testimony of

vocational expert Rieser.

ALJ Meachum's decision became the final decision of the Commissioner when the Appeals Council denied Rudie's request for review.

## OPINION

On judicial review, the court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Accordingly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

Rudie now seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g), contending that ALJ Meachum committed two errors: (1) failed to translate her finding that Rudie had moderate limitations in concentrating, persisting, or maintaining

8

pace into a well-reasoned and supported residual functional capacity finding; and (2) failed to resolve apparent conflicts between the jobs identified by the vocational expert and the Dictionary of Occupational Titles. The court addresses these contentions in turn.

I. Concentration, Persistence, and Pace

Plaintiff first complains that the ALJ did not account adequately for plaintiff's "moderate" difficulties in concentrating, persisting, and maintaining pace in formulating her RFC or corresponding hypothetical to the VE, despite the ALJ herself endorsing these limitations after evaluating the severity of plaintiff's mental impairments at step three. Generally, when propounding a hypothetical to the vocational expert, an ALJ "must orient the vocational expert to all of the claimant's limitations that are supported by the record, including deficiencies of concentration, persistence and pace." *See, e.g.*, *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Moreover, an ALJ courts error by employing terms like "simple, repetitive tasks," insofar as such phrases do not necessarily capture the ability to stick with a given task over a sustained period of time. *O'Connor-Spinner*, 627 F.3d at 619-20. Still, there is no *per se* requirement that the ALJ include the terms "concentration, persistence and pace" in the hypothetical. *Id*.

Indeed, as this court has observed in past cases, the phrase "concentration, persistence or pace" is simply a general category that does not necessarily communicate to

the VE or anyone else what a claimant can or cannot do.[4] *Lindemann v. Saul*, No. 18-CV-932-JDP, 2019 WL 2865337, at *1 (W.D. Wis. July 2, 2019); *Rossenbach v. Colvin*, No. 13-CV-435-BBC, 2014 WL 1729096, at *2 (W.D. Wis. Apr. 30, 2014). For this reason, an ALJ may frame the hypothetical in whatever terms she likes, provided it adequately accounts for the claimant's limitations. *O'Connor-Spinner*, 627 F.3d at 619; *Rossenbach*, 2014 WL 1729096, at *3 (W.D. Wis. Apr. 30, 2014) ("[T]he lesson from *O'Connor–Spinner* is not that the administrative law judge must use particular 'magic language' when setting forth the plaintiff's residual functional capacity, but rather that the language he uses must reflect all of the limitations that the plaintiff has.").

In addition to limiting plaintiff to unskilled work involving simple, routine, and repetitive tasks, ALJ Meachum included just such descriptive language in the RFC and corresponding hypothetical to reflect plaintiff's actual mental limitations: she could not do fast-paced production line or tandem tasks; she could not handle more than occasional changes in the work setting; she could not work for more than two hours at a time before needing a regular work break; and she could have no more than occasional interaction with the public, co-workers and supervisors. Plaintiff concedes that the restrictions on fast-paced production line or tandem tasks, and working no more than 2 hours at a time before needing a break, "would possibly address moderate CPP." (Pl.'s Br. (dkt. # 14) 21.)

---

[4] *See* SSA, Program Operations Manual System (POMS) DI 24510.065(B)(1)(c), available at https://secure.ssa.gov/poms.nsf/lnx/0424510065 ("Include no severity ratings or nonspecific qualifying terms (e.g., moderate, moderately severe) to describe limitations. Such terms do not describe function and do not usefully convey the extent of capacity limitations.").

Still, plaintiff argues, remand is required because the ALJ neither explained how she arrived at this limitation, nor identified what evidence supported it. The court disagrees. Contrary to plaintiff's argument, the ALJ's RFC assessment is not conjured from whole cloth; rather, it is traceable to the narrative RFC assessment provided by Harris, the state agency consultant. In several cases, the Seventh Circuit has found no error by the ALJ in adopting an agency consultant's narrative RFC finding, provided the ALJ reasonably credited the consultant's opinion and the opinion is "not inconsistent" with the consultant's findings on the worksheet in Section 1 of the assessment. *See Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015) (ALJ adequately accommodated CPP limitation where ALJ adopted RFC limitations consistent with state agency doctor's narrative opinion; RFC limitation similarly restricted claimant to "simple, routine tasks and limited interactions with others" to account for CPP limitation caused by anxiety); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("[I]n some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations.");[5] *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (holding that the ALJ reasonably relied upon a medical expert's RFC determination in formulating hypothetical to VE). *See also Ford v. Berryhill*, No. 17-cv-544 (W.D. Wis. June 4, 2019) (Op. & Ord. (dkt. #13) 19) (upholding ALJ's decision

---

[5]The worksheet at issue in this case did not involve checkboxes. Instead Harris typed in whether plaintiff was "not significantly limited," "mildly limited," "moderately limited," or "markedly limited" as to various abilities. But the issue is the same as in *Varga*, which is whether the consultant's narrative opinion adequately encapsulates the findings on the worksheet.

11

where plaintiff conceded that, in formulating the RFC, the ALJ reasonably relied on the opinions of a medical expert who provided testimony during the hearing and an examining doctor who found that plaintiff "could perform unskilled work with brief social contact in a low-stress environment"); *Rabitoy v. Berryhill*, 2018 WL 1010219, *2 (W.D. Wis. Feb. 21, 2018) (ALJ reasonably adopted narrative opinions from state agency consultants that "effective translate[d]" what consultants meant when they indicated on worksheet that Rabitoy had certain moderate limitations).

Plaintiff further argues that the ALJ erred in relying on Harris's narrative RFC assessment because it did not account for the moderate limitations she found on the ratings section of her assessment, including: (1) the ability to carry out detailed instructions; (2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. More specifically, plaintiff argues it was inconsistent for Harris to find that plaintiff *had* these moderate limitations, yet conclude that she could "maintain focus, pace, and persistence for simple tasks for 2-hour periods over an 8-hour workday within a normal 40-hour work schedule."

The court again disagrees. As the Seventh Circuit noted in *Capman v. Colvin*, 617 F. App'x 575 (7th Cir. 2015), that a claimant "is moderately limited in his ability to complete a day or week of work without interruption, as noted in Section I of the form, does not mean that he could not function satisfactorily. A moderate limitation is not a

complete impairment." *Id*. at 579 (citing *Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007)). *See also* SSA, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164 (Sept. 26, 2016) (effective January 17, 2017) (clarifying that a "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."). Similarly, that plaintiff has the moderate limitations endorsed by psychologist Harris on section 1 of the RFC assessment form does not mean that she could not maintain any type of full time work. Plainly, as directed by the mental RFC form, Harris considered plaintiff's limitations in these areas but determined that she was nonetheless capable of persisting, attending, and maintaining adequate pace at a full time job provided she was performing only simple tasks and given regular, two hour breaks.

This is also consistent with Harris's other findings -- namely, that Rudie had moderate limitations in her ability to carry out detailed instructions, but no significant limitations in her ability to carry out very short and simple instructions, make simple work-related decisions, or maintain attention and concentration for extended periods. In short, there is nothing patently inconsistent between Harris's findings of a few, moderate limitations on the checklist portion of the mental RFC form and her translation of those same limitations into a narrative RFC assessment that found plaintiff capable of performing certain types of available, full-time work.

Additionally, the ALJ explained that she had based her RFC determination on the record as a whole, including her own finding that plaintiff had moderate limitations in concentration, persistence, and pace. In support of this finding, the ALJ cited plaintiff's

13

reports that: (1) she did not have trouble completing tasks or concentrating; (2) she could follow written instructions well and spoken instructions "okay"; (3) she could cook complete meals and manage her own finances; and (4) she liked to do quilting, which the ALJ noted "requires focus and persistence." (AR 28.) All of these findings align with Harris's opinion that plaintiff could maintain focus, pace, and persistence for simple tasks for 2-hour periods over an 8-hour a day, 40-hour workweek.

Taking a different tack, plaintiff next argues that Harris's RFC assessment was outdated because she did not account for evidence later entered into the record. She further maintains that the ALJ should not have drawn any conclusions from later received medical records without first calling for review and interpretation by a medical expert. Although an ALJ *may* err by relying on an assessment where the record contains "new, significant medical diagnoses [that] reasonably could have changed the reviewing physician's opinion," *Moreno v. Berryhill*, 882 F. 3d 722, 728 (7th Cir. 2018), whether remand is actually required is case-specific. As the Seventh Circuit recently observed, "[i]f an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017) (citing *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)).

In this case, after citing to a handful of isolated records, plaintiff argues that medical records post-dating the hearing show "periods of worsening" of her psychiatric impairments that Harris did not consider. In contrast, ALJ Meachum found that these later records did *not* document any worsening of her psychiatric impairments and actually showed that plaintiff responded well to medication and therapy. (AR 32-33.) Having now reviewed

these records, the court finds that the ALJ's assessment is supported by sufficient evidence to be upheld. Although plaintiff presented to her therapist and psychiatrist with ongoing struggles with anxiety and anger management, overall the records do not establish any "new, significant" diagnoses or changes in plaintiff's mental condition.

As the ALJ noted, mental status examinations throughout this time period revealed low average intellectual functioning, as well as, at least at times, a dysphoric or depressed mood and a blunted affect. However, plaintiff was consistently described as having good grooming, normal and appropriate speech, good attention, and logical thought content. (AR 734-35, 766, 812-13, 843-44, 853-55.) Indeed, at her most recent visit with plaintiff before the hearing, plaintiff's therapist noted that her "concentration and attention as assessed by staying on track, responding in detail to interview questions, and by the patient's self-report was within normal limits." (AR 731-32.) Moreover, plaintiff generally responded well to medication changes and therapy. (*See* AR 752 (plaintiff reporting to Dr. Ramirez that mood was stable and medications made a big difference in her overall functioning, although she still had some problems controlling her anger and sleeping through the night).) Accordingly, the court agrees with the Commissioner that the records do not document any significant changes in plaintiff's condition that were reasonably likely to have changed Harris's mental RFC assessment, nor the ALJ's RFC formulation.

Finally, apart from the moderate limitations endorsed by Harris, plaintiff fails to point to *any* medical evidence in the record that shows she has additional restrictions related to concentration, persistence, or pace, other than what the ALJ already addressed and included in the RFC. Absent such evidence, there is no basis to remand this case.

*Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("Because Jozefyk did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand."); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). Moreover, insofar as plaintiff's main complaint seems to be that the ALJ did a poor job of linking the various limitations in the RFC to the evidence, it is unclear how plaintiff would benefit even if the court agreed. The articulation rule does not exist for its own sake; rather, it is necessary to "assure [the court] that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

Having failed to call to the court's attention to any important evidence that the ALJ should have discussed and addressed further in the RFC, plaintiff has not shown that she is entitled to a remand.

## II. Vocational Expert Testimony

This leaves plaintiff's second argument that the ALJ's finding at step five is not supported by substantial evidence. In particular, plaintiff argues that, as defined by the DOT, the general office clerk job cited by the VE requires a higher reasoning level and

more contact with people than the ALJ's hypothetical would allow.⁶ (Pl.'s Br. (dkt. # 14) 36-38, 41-43). Because plaintiff's counsel did not identify any conflict with the DOT at the hearing or otherwise challenge the ALJ's testimony about the general office clerk job, plaintiff now must show that the "conflict was obvious enough that the ALJ should have picked up on [it] without any assistance." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008).

Plaintiff has failed to carry this burden. First, as the Seventh Circuit has indicated, a GED reasoning score of even three is not necessarily inconsistent with simple, unskilled work. *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (plaintiff's having completed high school and training to become a certified nurse's assistant, along with her cognitive capacity to follow simple instructions, "appear to match the requirements of GED reasoning level three, and so any conflict is not so obvious that the ALJ should have pursued the question."); *see also Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (job requiring level three reasoning was not inconsistent with claimant's ability to follow only simple, concrete instructions).

Second, plaintiff does not point to any evidence that she actually lacks adequate reasoning skills. On her function report in July 2015, she reported that she shopped

---

⁶The general office clerk position, DOT code 239.567-010, requires level two reasoning development, defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, App. C, available at https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM. In addition, the "6" in the fifth digit of the DOT code indicates that the job could involve "[t]alking with and/or signaling people to convey or exchange information" and could include "giving assignments and/or directions to helpers or assistants." *Id.*, App. B.

17

monthly for groceries and things for the home; had the ability to pay bills, handle a savings account, count change and use a checkbook; followed written instructions "very well"; and followed spoken instructions "ok." (AR 312-17.) Moreover, her various part time jobs suggest that she can in fact "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations."

Third, and finally, it is not at all clear that the fifth digit of the DOT code addresses the *frequency* of social interaction as opposed to the *type* of social interaction, or that plaintiff lacks the ability to interact with people in this manner. At best, plaintiff has shown *the possibility* of a conflict, which is not enough to show that it was obvious enough that the VE should have picked up on it. In short, because plaintiff has failed to show an actual conflict, much less one that was apparent, the ALJ did not err in accepting the VE's testimony concerning the general office clerk jobs.[7]

That being said, even assuming plaintiff *could* establish a conflict, remand still would not be warranted because plaintiff fails to raise any challenge to the other two jobs identified by the VE -- housekeeper (DOT code 323.687-014) and production worker

---

[7]Plaintiff also argues generally that the VE's testimony regarding fast-paced work and no production quotas conflicts with the DOT, apparently because it does not contain that information. However, when a VE's testimony merely supplements (rather than conflicts with) the DOT, a plaintiff forfeits her opportunity to challenge the VE's testimony by failing to object to the testimony during the administrative hearing. *See Brown v. Colvin*, 845 F. 3d 247, 254 (7th Cir. 2016) ("Brown concedes that [the VE's testimony about sit-stand options and allowable time off task] merely supplemented (and did not conflict with) the Dictionary of Occupational Titles (DOT), which means that she forfeited these arguments by failing to object to the testimony during the administrative hearing."); *see also Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008) (because DOT does not address the subject of sit-stand options, there was no apparent conflict between VE's testimony and the DOT). Moreover, as plaintiff concedes, the VE specifically explained that his testimony regarding limitations not in the DOT were informed by his personal experience.

helper (DOT code 524.687-022). According to the VE's unchallenged testimony, a total of 591,000 of these jobs exist in the national economy. Because there are a significant number of jobs that plaintiff can perform even if the general office helper jobs are discarded, there would be no point to remand this case. *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("As few as 174 jobs has been held to be significant, and it appears to be well-established that 1,000 jobs is a significant number."); *Keys v. Barnhart*, 347 F.3d 990, 995 (7th Cir. 2003) (harmless error doctrine applies to judicial review of administrative decisions).

ORDER

IT IS ORDERED that the decision of the Commissioner of Social Security denying plaintiff Jennifer Lynn Rudie's applications for Disability Insurance Benefits and Supplemental Security Income is AFFIRMED. The clerk of court is directed to enter judgment for the defendant and close this case.

Entered this 13th day of December, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge